**STATE ex HAMMAKER v EVANS et**

Ohio Appeals, 7th Dist, Mahoning Co

No 2461. Decided June 24, 1938

Abe Levin, Youngstown, for relator-appellant.

H. H. Hunt, Assistant Law Director, Youngstown, for respondents-appellees.

## OPINION

By BENNETT, J.

On May 3, 1935, the relator received a letter signed by Leroy Goodwin, Chief of Police of Youngstown, notifying him that he had been dismissed from the Youngstown Police Force for various reasons, including failure to report for duty on the preceding night; conduct unbecoming an officer in driving an automobile while intoxicated, in failing to stop after striking a lady pedestrian, in driving away from the scene of the accident, and in failing to report said accident; and for incompetent, negligent and inefficient performance of his duties as a police officer.

On May 4, 1935 the Chief of Police notified the Youngstown Civil Service Commission of this dismissal and of his grounds therefor. For nearly eight months, Hammaker did nothing, but on December 24, 1935, through his attorney, he filed a request for reinstatement with the Civil Service Commission, saying that he was illegally discharged "because his discharge was not made by the appointive power, to-wit: the mayor of the City of Youngstown."

Hammaker, neither at this time nor at any time since, has appealed upon the merits of the charges against him, but has relied solely on the claim that he could be discharged only by the appointive power and that the appointive power was the mayor and not the Chief of Police. The respondents contend that, so far as the merits of the charges are concerned, Hammaker's failure to appeal upon the merits within ten days after May 4th, has barred his right to make such an appeal.

On April 8, 1936, the Civil Service Commission rendered what they termed an "opinion" to the effect that a discharge from the police force "can only be made by the mayor of this city or with his approval," "that the dismissal of Walter D. Hammaker was not properly made according to law and for this reason alone it is ordered that he be reinstated until suspended or until such time, if any, the said charges may be heard and determined in the proper manner."

The Chief of Police appealed from this order to the Court of Common Pleas and then to this court. This court affirmed the lower court's dismissal of the appeal, saying that it was "not concerned as to whether Hammaker was properly or improperly dismissed or whether he was properly or improperly reinstated", but was satisfied that the statute made no provision for an appeal on behalf of the city. A motion to certify the record in the case was overruled by the Supreme Court.

Not having been reinstated, the relator then brought his action in mandamus asking that the mayor of Youngstown be ordered to recognize the order of the Civil Service Commission and to reinstate the relator; that the Chief of Police be ordered to put him back to work; and that the Civil Service Commission and the City Director of Finance be ordered to certify the necessary vouchers and to pay him $3,038.08 salary due for the period of the claimed unlawful suspension up to the date of the filing of his petition.

The Court of Common Pleas denied the writ.

Appeal is made to this court on questions of law.

The appellant contends (1) that the order of the Civil Service Commission was determinative of the matter, and (2) that even if this were not so, the opinion which the commission expressed was correct and the relator· was unlawfully discharged.

We agree with neither contention and believe that the judgment below should be affirmed.

The question as to whether the Chief of Police or the mayor had the authority or power to discharge a Youngstown policeman for misconduct was entirely a question of law and the determination of that question was not one which the statute committed to the commission. The commission was given the authority only to consider and affirm, disaffirm or modify the orders of the appointing authority. If the appointing authority had acted the only thing the commission had jurisdiction to determine was the truth of the charges.

"We are of the opinion that the commission is, in the hearing of the appeal, confined to a consideration and determination of the truth of the charge or charges of delinquency upon which the order of removal is based and of which the employee has been advised."

**State v Board of Agriculture, 95 Oh St 285.**

And it seems very clear that if the commission was right in its opinion· that the appointing authority had **not** acted then they had no right to do anything, to say nothing of getting off the reservation and ordering the man reinstated. As said by Judge Williams in **Toledo v Osborne, 23 Oh Ap 62, 65:**

"In the first place, there was no valid order from which an appeal could be taken and in the second place no appeal was taken within the ten day limitation provided by statute. All proceedings, therefore, taken by the appointing officer and the Civil Service Commission * * * were an absolute nullity."

Appellant further contends that the appellees, by their appearance and former appeal to the court, waived any objection which they might have had to the authority of the Civil Service Commission to make ·such an order. Appearance waives only objections to jurisdiction over the person, not to jurisdiction of the subject matter. We hold that the Youngstown Civil Service Commission has no jurisdiction of the subject matter which they attempted to determine, had no authority to make such an **order** and that no appearance by the appellees to contest the matter could give the commission such jurisdiction, **11 Ohio Jurisprudence, "Courts", §§61, 62,** and nothing was said or done by this court on the former appeal which approved or affected the order in question or which made it res adjudicata. The order remained after the former appeal, just what it had been before it, an order which was ineffective because issued by a tribunal without any lawful authority to issue it.

Coming now to the other and more important question we hold that the Youngstown Chief of Police is the appointing authority in the Police Department and that consequently under the Civil Service statutes and rules the proper authority to discharge patrolmen.

The City of Youngstown was a charter city during all of the period in question and during that period the charter provided that all of the provisions of the Ohio General Code relating to municipal Civil Service were adopted as a part of the charter, with certain stated exceptions.

Sec 486-17a GC provides that the tenure of office of every employee in the classified service, which included Hammaker, shall be during good behavior and efficient service and that before he. can be removed the "appointing authority" shall give him a copy of the order of discharge with the reasons for the same. Hammaker's order and copy of the charges against him came from the Chief of Police. This is claimed to be an unlawful and insufficient order, because the chief was not the appointing authority. It is claimed that the mayor was the appointing authority in the Police Department.

The charter provides:

"Section 3. The executive and administrative powers of the city shall be vested in the mayor, heads of departments and other officers provided for in this charter.

"Section 4. The mayor shall be the chief executive officer of the city. * * * He shall appoint and may remove the heads of all departments."

Section 20 creates seven administrative departments, §21 provides. that .the .mayor

shall be "Director" of three of these departments and that he shall appoint the heads of the other four. Of the other four the title of the head of the Law Department is City Solicitor, of the head of the Finance Department is "Director of Finance", and of the Police and Fire Departments is "Chief". §21 continues:

"The director or chief of each department shall have supervision and control of the department."

Section 22 reads as follows:

"The work of the several departments shall be distributed among such divisions thereof as are established by this charter. There shall be a commissioner or head to each division, who shall be appointed and may be removed, by the Director of the department with the concurrence of the mayor, in conformity with the Civil Service provisions of this charter. The commissioner or head of each division, with the approval of the Director of the Department, shall appoint and may remove all officers and employees therein, in conformity with the Civil Service provisions of this charter.

"The commissioner or head of each division shall annually on the first Monday in February, or such other date as may be fixed by the council, render to the mayor a full report of the transactions of his department for the preceding calendar year, and shall furnish to the council or mayor at any time such information relating to his division as each may require."

Section 48 reads as follows:

"The Chief of Police shall be the head of the Department of Police and shall have exclusive control of the stationing and transfer of all patrolmen and other officers and employees constituting the Police Force.

"The Police Force shall be composed of a chief and such officers, patrolmen and other employees as may be provided by ordinance of the council. In case of riot or other emergency, the Chief of Police may appoint additional patrolmen and officers for temporary service, who need not be in the classified list of such division, but who shall have been citizens and residents of the City of Youngstown for not less than three years."

At the time the charter was adopted §59 read as follows:

"The Chief of the Police Department and the Chief of the Fire Department may suspend anyone in the classified service of such department for not more than thirty (30) days for violation of any rule of the department, and may permanently discharge from service anyone in the classified service for any of the causes set forth in §62 of this charter. But anyone so discharged who has been in the classified service of such department for one year, shall have the right to demand a written statement of the cause of his discharge, and the right to have the same heard and determined by the board of appeals, who, upon the written demand of such discharged person, shall forthwith hear and determine all questions pertaining to such discharge, and shall either affirm such discharge or order the reinstatement of the discharged person, and the decision of said board shall be final."

Section 59, however, was repealed in 1935 in connection with the repeal of all of the former provisions of the charter relative to Civil Service and the substitution therefor of the Civil Service provisions of the General Code.

Prior to the repeal of §59, there can be no question but that the Chief of Police was the proper authority to have discharged Hammaker if guilty of the misconduct charged. The section so provides in terms. And the former section §62 provides that heads of departments generally shall be the authority empowered to remove or suspend employees. The importance of these sections is that, although now repealed with all of the Civil Service sections, they indicate a uniform policy in the Youngstown charter as to the right to discharge or suspend, that the heads of departments were the officers with that authority. And no distinction was made between the Police Department and other departments. It should be noted that the word "heads" is not capitalized but was used in a descriptive sense, whether the title of the head was Director or Chief or City Solicitor. But "departments" was capitalized and used in the technical sense under the charter.

We note also that §53 at that time also provided generally that examinations for appointment were conducted by the heads of departments, also making no distinction between police or other departments.

Coming now to the question of the proper construction of §§21 and 22 of the charter, we believe that the Chief of Police is therein made the appointing power for the

Police Department and believe that this power is affirmatively given in the phrase "The Director or Chief of each department shall have supervision and control of the department." We believe that the purpose of these two sections in conjunction with §3, is to give the appointing power to each department head in departments not divided into divisions and to the division head, with the approval of the department head, in those departments consisting of divisions with separate division heads. We do not believe that in §22 of the charter it was intended to give subordinate division heads appointive power with the approval of their department superiors and not to have given the appointing power to the department heads in departments in which no such division subordinates existed.

Nor do we feel that the appointing power was simply omitted in §21, but, to the contrary, that the "control" of the department vested in the department head, was intended to include all the usual incidents of "executive control" of anything, including power to appoint subordinates.

The only case cited to us, or which we have discovered, which is reasonably closely in point is the case of **State ex Schmitt v Davis, Mayor, 49 Oh Ap 235.** It is cited to us by the relator-appellant as sustaining his contention, but to us seems strong authority against him.

In that case Schmitt had been appointed to the Fire Department by the Cleveland Safety Director. He was seeking to compel the succeeding Davis administration to recognize him as such. The argument of the defense was that his appointment was unlawful because the proper appointing power was the Chief of the Fire Department, not the Safety Director.

The court held, (1) that the Safety Director was the appointing power under the Cleveland charter, and (2) that the charter also affirmatively showed that the Fire Chief was not. Hammaker's counsel relies primarily on the part of the court's opinion dealing with the fact that the Fire Chief was **not** the appointing authority and calls attention to the similarity between language in the Cleveland charter and the language of §22 of the Youngstown charter. The fact is, however, that the very differences in the language in the two charters would cause a contrary conclusion. And in the second place, the only language in the Cleveland charter which would affirmatively put an appointive power in the Safety Director is found in the Youngstown charter as applicable to the Chief of Police.

On page 239 of that opinion the court shows that the Cleveland City government was divided into certain departments each headed by a director, appointed by the mayor, serving until removed by the mayor; that one of these departments was the safety department headed by the Safety Director; that the director shall have supervision and control of his department, practically the same words of the Youngstown charter, which are "the director or chief of each department shall have the supervision and control of the department." §115 of the Cleveland charter says that the Safety Director is executive head of police and fire. §48 of the Youngstown charter says that "The Chief of Police shall be the head of the Department of Police * * *" and §3 says, "The executive and administrative powers of the city shall be vested in the mayor, heads of departments * * *."

The above are the only provisions in the Cleveland charter putting the appointive power in the Safety Director, and every word in the Cleveland situation is found in the Youngstown charter but applicable to the Chief of Police.

The relator's counsel in the case at bar have quoted particularly the portion of the opinion in the Schmitt case dealing with §79 of the Cleveland charter, which corresponds with §22 of the Youngstown charter. The court says:

"Section 79 provides that the work of each department shall be distributed among such divisions thereof as are established. There shall be a commissioner or chief in charge of each division, who shall be appointed and may be removed by the director in conformity with then existing Civil Service rules. Each commissioner shall, with the approval of the director, appoint all officers and employees in his division and have control of its affairs.

"It is to be noted that it is provided that a commissioner or chief shall be in charge of each division, but when the appointive authority is mentioned and considered, the chief is omitted."

The corresponding language in the Youngstown charter is:

"There shall be a commissioner or head to each division * * *
and
"The commissioner or head of each division, with the approval of the director

of the .department shall appoint and may remove all officers and employees therein."

It will be observed that the word "Commissioner" is capitalized and refers to the technical title created by the Act, while the word "head" is used in a descriptive and generic sense of the head man, regardless of title. And for the same reason that the court in the **Schmitt** case stressed the importance of the omission of the word "Chief" in the sentence about the appointive power, so correspondingly is the inclusion of the word "head" important in the Youngstown sentence. . It is arguable, therefore, that in a department of one division only, §22 itself, without more, affirmatively confers the appointive power upon the head or chief of the department. But whether or not that be so, we feel that, construing this language in §22 together with the phrase in §21, "The Director or Chief of each department shall have the supervision and control of the department," the intent of the charter was to include the power to appoint subordinate employees in the authority of the chief of the department.

Sec 486-19 GC gives to the city Civil Service Commission power to "prescribe, amend and enforce rules, not inconsistent with the provisions of the act, for the classification of the positions in the Civil Service of such city; and * * * for appointments * * * removals * * * therein." Not only is the commission given such authority to make the rules, but these rules are deemed so important that if the City Commission "fails to prepare and submit such rules", the state commission is instructed to make them itself for the municipality. And the municipal commissions are required to make reports to the State Commission "from time to time" as to the manner in which these "rules and regulations have been and are being administered." All of this Civil Service program, including particularly the stress placed upon these "rules and regulations", is designed to insure a Civil Service governed by law and by rules and not by men, with the purpose of protecting municipal employees against the whims of individuals, and the discriminations of politics, religion and personal animosities.

Curtis v State ex, 108 Oh St 292.

And the Youngstown Civil Service Commission, on February 19, 1934, had adopted a Code of such rules and regulations for the "examination, appointment, * * * and removal of appointees in its classified service of the city of Youngstown." The date of adoption was of course shortly after the charter had been amended to substitute the statutory Civil Service for the prior charter provisions.

Among these rules adopted by the Youngstown Commission are found Rule XVIII, §3, as follows:

"In all cases of removal or suspension the head of the department so making the same shall furnish the employees or officer with a copy of the order of removal or suspension and his reason for same. Any such employees so removed or suspended may appeal to the commission to determine the sufficiency of his cause of removal or suspension. Such appeal shall be taken within ten (10) days from the date of such removal or suspension, and the decision of the commission shall be final.

"The head of the department shall have the right to remove, reduce or suspend any official or employee in his department upon written charges or misconduct preferred by any citizen, but only after reasonable notice to the accused and full hearing. Any such official or employee shall have the right of appeal to the commission, whose decision shall be final."

and Rule XXII, §5, as follows:

"The Chief of the Police Department and the Chief of the Fire Department may suspend or discharge anyone in the classified service of such department for not more than thirty (30) days without pay for violation of any rule of the department, and may discharge from the service anyone in the classified service for any of the causes set forth in §2 of Rule XVII of these regulations. But anyone so suspended or discharged shall have right to demand a written statement of the causes of his discharge or suspension and the right to have the same heard and determined by the commission, who, upon the written demand of such discharged or suspended person, shall forthwith hear and determine all questions pertaining to such discharge or suspension and shall either affirm such discharge or suspension or order the reinstatement of the discharge or suspension, and the decision of said commission shall be final."

Obviously these rules were both written on the assumption that the head of the department, not the mayor, was the appointing and discharging power, and even more particularly that in the Police Department, the Chief, and not the Mayor, should have discharged "Hammaker. Not

only do these rules assume that this procedure accords with the charter, but, insofar as the commission may do so, in the exercise of their statutory authority, these rules in their own right provide removal and notification by the chief as the proper procedure.

The causes set forth in Hammaker's discharge included certain of those listed in §2 of Rules XVIII referred to above and Chief Goodwin followed precisely the procedure laid down by the rules of the commission. The commission, disregarding its own rule, expressed the "opinion" in this individual case that "a discharge from the Police Force can only be made by the mayor of this city or with his approval." They did not change the rule, however, for the copy of the rules introduced in evidence at the trial of this mandamus proceeding over a year later shows that the same rule was then unchanged.

One other matter perhaps deserves comment as reflecting on the merits of the relator's claim, under his own present contentions.

The brief of the relator-appellant concludes with a summary. The first sentence of this summary reads, "The relator-appellant was legally appointed to the department of police of the City of Youngstown." This is conceded by the respondents to be true but the only evidence respecting his appointment is the formal written notification to the Civil Service Commission of Hammaker's appointment signed, "Leroy Goodwin, Chief of Police." The respondents offered additional testimony to show that Chief Goodwin was the one who had made the appointment and that Hammaker was in fact serving under a Goodwin appointment at the time of his removal by Goodwin. The court refused to admit this testimony, when objected to by relator's counsel although the latter's argument in this court is that his discharge is not valid because not made by the appointive authority.

The second sentence of the summary reads, "Under the law of this state, he could be removed only by the mayor or the Chief of Police, with the consent and approval of the mayor." The answers of the various respondents all allege that in fact the Chief of Police had acted with the approval of the mayor and at his direction, in discharging Hammaker. At the trial counsel for the respondents offered testimony to prove this fact. Counsel for the relator by objection, sustained by the court, prevented this testimony from being introduced, which

he now argues is crucial as to the right to discharge.

The court believes that the writ of mandamus was properly refused by the trial court and the judgment is affirmed.